UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEAN REDCLIFT, | ) | CIVIL ACTION NO. 4:21-CV-1866 |
| *Individually and as ADMINISTRATOR* | ) | |
| *of the Estate of Stacy Redclift,* | ) | |
| Plaintiff | ) | |
| v. | ) | (ARBUCKLE, M.J.) |
| | ) | |
| SCHUYLKILL COUNTY *,et. al.* | ) | |
| Defendants | ) | |

<u>MEMORANDUM OPINION</u>
*PrimeCare Defendants' Partial Motion to Dismiss (Doc. 88)*

I.     INTRODUCTION

Tragically, Stacy Redclift took her own life when she was detained at the Schuykill County Prison. Her family now brings this civil rights action against a variety of actors, from the police officers who arrested her to prison guards, alleging they displayed deliberate indifference to her known risk of suicide. The medical providers at the Prison have now moved to partially dismiss the claims against them.[1] For the reasons that follow, I will deny the medical providers' Motion to Dismiss.

II.     BACKGROUND AND PROCEDURAL HISTORY

This case began on November 2, 2021, when Sean Redclift ("Plaintiff" or Sean),[2] acting individually and as the administrator of Stacy Redclift's estate, filed

---

[1] They do not move to dismiss the negligence claim (Count VII) against them.

[2] At times, for simplicity, I will refer to members of the Redclift family by their first names, without intending any disrespect or undue familiarity.

a Complaint. (Doc. 1). On January 6, 2022, Plaintiff amended his complaint as of right, and that is now the operative pleading. (Doc. 21).

In this motion to dismiss stage, I will take all facts presented in the Amended Complaint as true. *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In the early morning of January 6, 2020, Stacy Redclift was involved in a domestic dispute with her husband, Sean, and her son, Alexander. (Doc. 21, ¶ 45). Coledale Borough Police Officer Matthew Jungbaer and Coledale Borough Police Officers John Doe 1 and John Doe 2 arrived at her residence, and arrested Stacy "due to her allegedly erratic and non-compliant behavior." (*Id.* at ¶ 46). Stacy was later arraigned and released to her mother's house. (*Id.* at ¶ 47).

However, instead of staying at her mother's house, Stacy returned to her home, and engaged in erratic and non-compliant behavior. (*Id.* at ¶ 48). Officer Jungbaer, and the two John Doe police officers responded to the Redclift home and arrested Stacy. (*Id.* at ¶ 49). The officers brought Stacy to the Schuykill County Prison (the "Prison"). (*Id.*). However, before she arrived, Sean and Alexander told the officers that Stacy "had a history of mental illness, psychotic episodes, suicide attempts/ tendencies, and psychiatric hospitalizations." (*Id.* at ¶ 50). Despite this knowledge, the officers did not communicate this information to anyone at the Prison, including its medical providers. (*Id.* at ¶¶ 51-52).

On January 6, 2020, at 12:11 p.m., Stacy was booked and processed at the Prison. (*Id.* at ¶ 54). At 1:51 p.m., Nurse Hysock performed a medication verification for Stacy. (*Id.* at ¶ 56). Nurse Hysock ordered various medications for Stacy, but failed to order Stacy's Paxil, a psychotropic drug. (*Id.*).

In the early morning of January 7, 2020, Nurse Hollywood conducted a Stacy's mental health and suicide screening. (*Id.* at ¶ 58). Stacy told Nurse Hollywood that (1) she suffered from post-traumatic stress disorder, depression and bipolar disorder type two, (2) had a history of suicide attempts, (3) had a lengthy history of inpatient psychiatric hospitalizations, (4) she was currently being cared for by a psychiatrist for her mental health disorders, (5) that she was on medications for her medical illnesses, and (6) that she felt like she needed to see a mental health provider at that time. (*Id.* at ¶ 62).

The screening indicated that Stacy needed "further psychiatric evaluation," but it was never performed. (*Id.* at ¶ 59). Further, Nurse Hollywood incorrectly conducted the screening because she failed to obtain information from the Coaldale Borough Police Officers, and failed to "accurately appreciate, report, or record the information given to her by Officer Jungbaer, John Doe Coledale Police Officer 1, John Doe Coaldale Police Officer 2, or Ms. Redclift." (*Id.* at ¶ 61). Nurse Hollywood "reviewed and verified" Stacy's screening and medication forms at 4:07 a.m. on January 7, 2020. (*Id.* at ¶ 63).

Sometime on January 7, 2020, someone discovered that Stacy did not have her Paxil, and Nurse Practitioner McGowan ordered it for her. (*Id.* at ¶¶ 64-65). Despite it being ordered, the order was never approved, and Stacy did not receive any Paxil during her incarceration. (*Id.* at ¶ 65). However, Nurse Gross attempted to give Stacy her other medications, but she refused. (*Id.* at ¶ 69).

In the late evening of January 7, 2020, Stacy's cellmate found her hanging by a noose. (*Id.* at ¶ 71). Stacy Redclift died the next day. (*Id.* at ¶ 74).

Because of the aforementioned actions, Plaintiff pleads nine counts against the various defendants. As applied to this motion, Plaintiff brings a negligence claim, a wrongful death claim, a survival act claim against Nicole Hollywood LPN, Alyssa Hysock LPN, Cayla Sullivan LPN, Tara Hamm, LPN, HSA, Paula Dillman-McGowan, CRNP, Nicole Macaluso CRNP, Catherine Galle, LPN, Kimberly Ryan LPN, Carina Gross, LPN, Kendle Jemiola, and PrimeCare ("Moving Defendants"). Plaintiff also brings a 42 U.S.C. § 1983 Fourteenth Amendment deliberate indifference to medical care claim against the individual defendants (all Moving Defendants besides PrimeCare). Finally, Plaintiff brings a distinct *Monell* claim for violations of the Fourteenth Amendment deliberate indifference to medical needs.

On April 7, 2022, Moving Defendants moved to dismiss some of the claims against them for failing to state to claim upon which relief can be granted. (Doc. 88). Moving Defendants seek to dismiss Counts III (deliberate indifference to serious

medical needs and suicide risk), IV (*Monell* claim against PrimeCare), VIII (wrongful death), and XI (survival action) of the Amended Complaint.[3] Their Brief in Support was filed on April 12, 2022. (Doc. 94). Plaintiff filed a Brief in Opposition on May 9, 2022. (Doc. 100). Moving Defendants filed a Reply Brief on May 23, 2022. (Doc. 102). Thus, this Motion is ripe for resolution.

## III.    THE MOTION TO DISMISS STANDARD

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, the court "must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and ultimately determine whether Plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In review of a motion to dismiss, a court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

---

[3] Hence, Moving Defendants did not seek to dismiss the negligence claim against them at this stage.

In deciding whether a complaint fails to state a claim upon which relief can be granted, the court is required to accept as true all factual allegations in the complaint as well as all reasonable inferences that can be drawn from the complaint. *Jordan v. Fox Rothchild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). These allegations and inferences are to be construed in the light most favorable to the plaintiff. *Id.* The court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Further, it is not proper to "assume that the [plaintiff] can prove facts that [he] has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. *Id.* To determine the sufficiency of a complaint under the pleading regime established by the Supreme Court, the court must engage in a three-step analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where they are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminister Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief" and instead must "'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

> As the Court of Appeals has observed:

> The Supreme Court in *Twombly* set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint which pleads facts "merely consistent with" a defendant's liability, "stops short of the line between possibility and plausibility of 'entitlement of relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

*Burch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011).

## IV.   DISCUSSION

Moving Defendants argue that Plaintiff failed to plead any facts involving the actions of some of the Moving Defendants, that there was no underlying Constitutional violation, that Plaintiff failed to properly plead a *Monell* claim against PrimeCare, and that Pennsylvania Wrongful Death and Survival Act does not provide a cause of action. I'll discuss each argument in turn.

Page 7 of 22

A.    THE PERSONAL INVOLVEMENT OF SOME OF THE DEFENDANTS

Moving Defendants argue that Plaintiff "alleges no facts of personal involvement of Cayla Sullivan, LPN, Catherine Galle, LPN, Kimberly Ryan, LPN or Kendal Jemiola." (Doc. 95, p. 6). Plaintiff counters by arguing that all these defendants were personally involved, and they knew about Stacy's condition but failed to act appropriately.[4] (Doc. 100, pp. 25-27). Here, I agree with Plaintiff. He has alleged enough facts, though just barely.

To state a § 1983 claim, a Plaintiff must allege that each defendant had "personal involvement in the alleged wrongdoing." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)); *Clemens v. Warden SCI Greene*, 290 F. Supp. 3d 388, 395 (E.D. Pa. 2018). This includes "describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Id*. Simply put, "[l]iability under § 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice." *Quarles v. Palakovich*, 736 F. Supp. 2d 941, 949 (M.D. Pa. 2010).

---

[4] In support of this argument, and of others, Plaintiff asks the Court to consider parts of Stacy's medical records that he attached to his Brief in Opposition. The Court declines to consider them, as they are not integral to the Amended Complaint, nor does the Amended Complaint rely on it. *Borough of Moosic v. Darwin Nat. Assur. Co.*, 556 F. App'x 92, 95 (3d Cir. 2014).

Here, Plaintiff alleges that these defendants had:

(1) the responsibility of preventing inmate suicide, (Doc. 21, ¶118);

(2) worked at the Prison during Stacy's short incarceration, (*Id.* at ¶ 120);

(3) knew or should have known that Stacy had " a history of mental illness, psychotic episodes, suicide attempts/tendencies, and psychiatric hospitalizations prior to the time she was incarcerated at the Schuylkill County Prison, and that she was currently treating for mental illness and was on medication for the same," (*Id.* at ¶ 121);

(4) knew or should have known that she was especially vulnerable to suicide,e (*Id.* at ¶ 123); and,

(5) knew or should have known that Stacy needed a proper evaluation of her self-harm risk. (*Id.* at ¶ 125).

The Court finds that Plaintiff has plead sufficient facts against these individuals at this stage.[5] These individuals have fair notice of the claims Plaintiff is making against them, and once discovery begins, the Court and the parties will have a better picture about what these defendants knew about Stacy and her condition. But until then, and assuming Plaintiff's allegations are true, the claims against Cayla Sullivan, LPN, Catherine Galle, LPN, Kimberly Ryan, LPN, and Kendal Jemiola must survive. *See Ponzini v. Monroe Cnty.*, 897 F. Supp. 2d 282, 298 (M.D. Pa.

---

[5] I acknowledge that Moving Defendant asked me to follow the holding in *McCracken v. Fulton Ctny.*, No. 19-cv-1063, 2020 WL 2767577 (M.D. Pa May 28, 2020) to support their proposition that Plaintiff has not alleged sufficient facts in this case. However, "[c]omity persuades; but it does not command." *Mast, Foos & Co. v. Stover Mfg. Co.*, 177 U.S. 485, 488 (1900). At this stage of litigation, I believe Plaintiff has asserted enough facts, and to any extent the *McCracken* complaint and this complaint are similarly pled, I disagree with the holding in *McCracken*.

2012) ("At this preliminary stage, it would be inappropriate for the Court to make any findings of fact or to cast doubt upon any allegations as set forth in Plaintiffs' Amended Complaint.").

B.    WHETHER PLAINTIFF STATED A COGNIZABLE SECTION 1983 DELIBERATE INDIFFERENCE TO MEDICAL CARE/SUICIDE RISK CLAIM

Plaintiff has lodged two distinct, but similar claims against the Individual Defendants: a Fourteenth Amendment deliberate indifference to Stacy's known risk of suicide and a Fourteenth Amendment deliberate indifference to Stacy's need of medical care. (Doc. 21, ¶¶28-31). While these claims are quite similar, I will discuss them separately to avoid confusing the issues.

1.    Deliberate Indifference to Suicide

The Eighth Amendment protects prisoners from the infliction of cruel and unusual punishment. U.S. *Const.* amend. VIII. To prevail on any Eighth Amendment claim, an inmate must show: (1) a deprivation that is objectively, "sufficiently serious;" and (2) "a sufficiently culpable state of mind" of the defendant official. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Beyond this general standard, there are different types of Eighth Amendment claims, and different criteria apply depending upon the type of violation alleged. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

When a plaintiff seeks to hold prison officials or medical staff accountable for failing to prevent a prison suicide, the "vulnerability to suicide" framework applies.

This framework "is simply a more specific application of the general rule set forth in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) which requires that prison officials not be deliberately indifferent to the serious medical needs of prisoners." *Palakovic v. Wetzel*, 854 F.3d 209 (3d Cir. 2017). "In essence, a 'particular vulnerability to suicide' is just one type of 'serious medical need.'" *Id.* (*citing Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1024 (3d Cir. 1991). To plead a claim under this framework, a plaintiff must allege:

> (1) the prisoner had a particular vulnerability to suicide, (2) the prison official knew of that vulnerability, and (3) the prison official acted with deliberate indifference to that prisoner's vulnerability.

*Shirey v. Ladonne*, No. 18-4960, 2019 WL 1470863, at * 18 (E.D. Pa. Apr. 3, 2019) (citing *Palakovic*, 854 F.3d at 223-24 (3d Cir. 2017)).

Moving Defendants argue that Plaintiff's Amended Complaint does not allege sufficient facts to assert a Section 1983 claim. (Doc. 95, p. 15). Moving Defendants' analysis in favor of dismissing the claims against the individual defendants is reproduced in its entirety below:

> Mrs. Redclift underwent influenza, suicide, mental health, drug use, and medication verification screenings upon her admission to the prison. Medications were ordered and offered to Mrs. Redclift. Despite all of these efforts, Mrs. Redclift chose to take her life. This was a tragic but not preventable suicide. Simply stated, the Amended Complaint does not demonstrate deliberate or reckless indifference on the part of any of the medical staff.
>
> (*Id.*).

As to the first factor, Moving Defendants do not meaningfully address whether Stacy had a particular vulnerability to suicide. Plaintiff argues that he pleaded sufficient facts to support this, including the allegation that Stacy had multiple mental health conditions, a history of past suicide attempts, her altered mental status, and that Stacy was acting erratically and non-compliantly before her family and the Coledale Borough Police Officers. (Doc. 100, pp. 12-14).

"A particular vulnerability to suicide represents a serious medical need. The requirement of a particular vulnerability to suicide speaks to the degree of risk inherent in the detainee's condition. There must be a strong likelihood, rather than a mere possibility, that self-inflicted harm will occur." *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 320 (3d Cir. 2005) (internal citations and quotation marks omitted). However, this standard was "was never intended to demand a heightened showing at the pleading stage by demonstrating . . . that the plaintiff's suicide was temporally imminent or somehow clinically inevitable. A particular individual's vulnerability to suicide must be assessed based on the totality of the facts presented." *Palakovic v. Wetzel*, 854 F.3d 209, 230 (3d Cir. 2017).

Here, Plaintiff established that Stacy had a particular vulnerability to suicide. Sean alleges that Stacy suffered from multiple mental illnesses, suicidal tendencies, psychotic episodes, had a history of past suicide attempts, and past psychiatric hospitalizations. (Doc. 21, ¶ 50). Additionally, Stacy was undergoing a tumultuous

domestic dispute, to the point where her family asked Prison officials to disallow her calls to their house. (*Id.* at ¶¶ 45, 66-67). The cumulative circumstances of these facts satisfy Plaintiff's pleading burden and other courts in this circuit have denied arguments to the contrary. *See, e.g.*, *Nealman v. Laughlin*, No. 15-cv-1579, 2016 U.S. Dist. LEXIS 116881, at \*23 (M.D. Pa. Aug. 31, 2016) (finding that the cumulative nature of the plaintiff's mental health history, marital discord, prior suicide attempts, and delusional behavior satisfied the particular vulnerability to suicide pleading burden).

In reply, Moving Defendants ask me to rely on *Estate of Thomas v. Fayette Cnty.*, 194 F. Supp. 3d 358, 376-77 (W.D. Pa. 2016) and *Nealman v. Maben*, No. 15-cv-1579, 2019 WL 4781348 (M.D. Pa. Sept. 30, 2019) for the proposition that Plaintiff has only offered generic suicide risks, and as such, did not have a particular vulnerability to suicide. Both are distinguishable from this case because these decisions evaluated evidence at summary judgment. *In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 442 n. 211 (E.D. Pa. 2018) ("Defendants rely heavily on decisions that evaluated evidence on summary judgment. . . . Plaintiffs' allegations need not meet the summary judgment bar on a motion to dismiss."). In both of Moving Defendants' cited cases, the plaintiffs could not produce evidence

that countered the defendants' version of the facts.[6] But at the motion to dismiss stage, I only have one set of facts, and those facts support the finding that Stacy had a particular vulnerability to suicide.

Additionally, Plaintiff has satisfied the second and third pleading requirements. Plaintiff asserts that the individual defendants knew or should have known that Stacy was at a high suicide risk (Doc. 21, ¶¶ 122-23), but were deliberately indifferent to that risk by failing to, *inter alia*, ensure she was on suicide watch, that she not have the implements to commit suicide, and that she see a mental health provider. (*Id.* at ¶ 132). Those are enough facts at this stage, and regardless, Moving Defendants do not meaningfully analyze the second or third pleading requirement: *See* (Doc. 95, p. 15) (describing Stacy's suicide as "tragic but not

---

[6] In *Estate of Thomas*, plaintiff's only evidence to support the decedent's particular vulnerability to suicide is "a reference to two medical textbooks. . . ." *Estate of Thomas*, 194 F. Supp. 3d at 375. The court found this evidence woefully inadequate, considering that defendants presented an expert report at summary judgment. *Id.* In *Nealman*, the plaintiff could not carry her summary judgment burden by trying to prove that an inmate "belonged to a demographic with higher rates of suicide." *Nealman*, 2019 WL 4781348, at *15. Additionally, the evidence showed that the decedent was, *inter alia*, "relaxed, cooperative, and compliant," in the time before his suicide. *Id.* at 20. In fact, Judge Conner in *Nealman* distinguished his Rule 12 decision with the pending Rule 56 decision. *Id.* at 18. In his motion to dismiss opinion, Judge Conner found that the decedent had a particular vulnerability to suicide because he had "delusional, and psychotic behavior; recent marital discord; depression; a previous mental health hospitalization; and a prior suicide attempt." *Id.*

preventable" and that she underwent suicide and mental health screenings).
Therefore, Plaintiff has adequately pled a deliberate indifference to suicide.

2.      Deliberate Indifference to Medical Care

The Eighth Amendment prohibits cruel and unusual punishment, and
consistent with that demand, it requires prison officials to "provide humane
conditions of confinement, including adequate medical treatment." *Hankey v.
Wexford Health Sources*, 383 F. App'x 165, 168 (3d Cir. 2010) (citing *Estelle v.
Gamble*, 429 U.S. 97, 103-04 (1976)). To establish a violation of a constitutional
right to adequate medical care, an inmate must show (1) a serious medical need, and
(2) acts or omissions by prison officials that indicate deliberate indifference to that
need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference
to a serious medical need involves the "unnecessary and wanton infliction of pain."
*Estelle*, 429 U.S. at 104. Such indifference may be evidenced by an intentional
refusal to provide care, delayed provision of medical treatment for non-medical
reasons, denial of prescribed medical treatment, denial of reasonable requests for
treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d
64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of
permanent injury," *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

A deliberate indifference to medical care claim is near identical to a deliberate
indifference to suicide risk claim. Therefore, for substantially the same reasons why

the deliberate indifference to suicide risk claim will survive, the deliberate indifference to medical care claim will survive. Plaintiff alleged that Stacy had a particular vulnerability to suicide and therefore, had a serious medical need. Further, at this stage, Plaintiff has successfully plead that the Individual Defendants displayed deliberate indifference to her serious medical need. Therefore, the deliberate indifference to medical care claim will survive.

C.   THE *MONELL* CLAIMS

Moving Defendants assert that the *Monell* claim against PrimeCare must be dismissed because "Plaintiff has alleged no facts to substantiate the boilerplate allegations of deficient custom or policy." (Doc. 95, p. 17). Plaintiff clarifies that his *Monell* claims are distinct: he is pleading both that PrimeCare failed to adopt policies and that it failed to train its employees. (Doc. 100, p. 27). Additionally, Plaintiff counters that he adequately pled sufficient facts to support his claims, and he is proceeding with single incident failure to train claim, and thus, does not need to plead a pattern of similar constitutional violation. (Doc. 100, pp. 27-35). I agree with Plaintiff, and before I discuss why, I will generally discuss *Monell* claims.

A municipality or corporation, like PrimeCare, cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Rather, "under § 1983, local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*,

563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479

(1986) (emphasis in original). To state a claim against PrimeCare, Plaintiff must

allege that the violation of his rights was caused either by a policy or by a custom of

the corporation. *Monell*, 436 U.S. at 694; *Berg v. Cnty. of Allegheny,* 219 F.3d 261,

275 (3d Cir. 2000); *Luck v. Mount Airy No. 1, LLC*, 901 F. Supp. 2d 547, 564 (M.D.

Pa. 2012) (holding that *Monell* applies to private corporations who are state actors).

Municipal or corporate policies include the decisions of a government's

lawmakers and the acts of its policymaking officials as well as customs, which are

acts or practices that, even though not formally approved by an appropriate decision

maker, are so persistent and widespread as to have the force of law. *Id.*; *Natale v.*

*Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003). In other words, a

municipality or corporation "'can be held responsible as an entity when the injury

inflicted is permitted under its adopted policy or custom.'" *Mulholland v Gov't Cnty.*

*of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (quoting *Beck v. City of Pittsburgh,* 89

F.3d 966, 971 (3d Cir. 1996)).

A policy or custom can be shown in any of four ways:

(1) the existence of a formal policy, officially promulgated or adopted
by a municipality; *Monell*, 436 U.S. at 690; or

(2) that an official or officials responsible for establishing final policy
with respect to the subject matter in question took action or made a
deliberate, specific decision that caused the alleged violation of
plaintiff's constitutional rights, *Pembaur v. City of Cincinnati*, 475 U.S.
469, 483-84 (1986)(citation omitted); or

(3) the existence of an unlawful practice by subordinate officials so permanent and well settled as to constitute "custom or usage" and proof that this practice was so manifest or widespread as to imply the constructive acquiescence of policymaking officials, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-30 (1989); or

(4) if liability is based on a claim of failure to train or supervise, that "the failure to train amounts to deliberate indifference to the rights of persons with whom...[municipal employees] came into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

*Nye v. Cumberland Cnty.*, No. 1:14-CV-713, 2016 WL 695109, at *4 (M.D. Pa. Feb. 19, 2016).

"To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). Additionally, there must be a direct causal link between the policy or custom and the alleged constitutional violation. *City of Canton v. Harris,* 489 U.S. 378, 385 (1989).

As to his absence of policy *Monell* claim, Plaintiff adequality pleaded the lack relevant policies and how that absence harmed him. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (recognizing that the failure to promulgate policies can lead to *Monell* liability).[7] Plaintiff contends that PrimeCare lacks

---

[7] In *Natale*, a prison had no policy or requirement "that a doctor see an inmate during the first 72 hours of incarceration and no one was charged with determining whether an inmate should be seen by a doctor earlier in the 72-hour period." *Id.* at 584-85. The court concluded that "the failure to establish such a policy is a 'particular[ly] glaring omission' in a program of medical care," and thus denied summary judgment on plaintiff's *Monell* claim.

appropriate policies in a plethora of situations, including a policy: on training its staff to assess and identify inmates with mental illness and a suicide risk; ensuring that inmate's required medications are being administered, and "safely and appropriately treat[ing], manage[ing], and car[ing] for an inmate who manifests risk factors for self-harm and suicide;" and ensuring that inmates with suicide risks are not with tools they can use to kill themselves. (Doc. 21, ¶ 146). Plaintiff contends that the lack of appropriate policies "was so wide spread and pervasive that it developed into a customary practice, of which [PrimeCare] was aware of and condoned." (*Id.* at ¶ 149). This is sufficient to state a viable absence of policy claim.

Plaintiff also contends that PrimeCare failed to train its employees. (Doc. 100, pp. 32-34). To succeed on a failure to train *Monell* claim, a plaintiff must "show[] that the failure amounts to deliberate indifference to the rights of persons with whom those employees will come into contact.'" *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "Additionally, 'the identified deficiency in a city's training program must be closely related to the ultimate injury;' or in other words, 'the deficiency in training [must have] actually caused' the constitutional violation." *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)).

Here, Plaintiff has pleaded enough facts to support both of the requirements of a failure to train *Monell* claim. Plaintiff pled that PrimeCare was responsible for the health and wellbeing of inmates at the Prison, (Doc. 21, ¶ 141-42), responsible for training its staff towards that goal, (*Id.* at ¶ 140), didn't train their staff (*Id.* at ¶ 145), knew or should have known it would lead to harm (*Id.*), and thus, Stacy's death was "a highly predictable, and even expected, consequence." (*Id.* at ¶ 153). This is sufficient for Plaintiff's claim to continue. Additionally, while Moving Defendants claim in their legal standard that Plaintiff must plead a pattern of past unconstitutional behavior, they do not analyze or apply this law to this case. Therefore, I decline to discuss it.[8]

### D.    THE WRONGFUL DEATH AND SURVIVAL ACTION CLAIMS

Moving Defendants argue that Plaintiff's wrongful death claim (42 Pa. C.S. § 8301) and survival action claim (42 Pa. C.S. § 8302) fail because they "do not create

---

[8] Moving Defendants' legal standard is only half right. Generally, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citing *Board of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). But, in some instances "single-incident liability" can be enough. *Id.* at 63. Single incident liability contemplates that, "in certain situations, the need for training can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (citing *Canton*, 489 U.S. at 390 n.10) (internal quotations omitted). Whether Plaintiff's claims appropriately fits into single incident liability was not briefed by Moving Defendants so I will decline to discuss it.

independent causes of action; rather, they are derivative in the sense that the substance of the claims derives from the injury to the decedent." (Doc. 95, p. 18). Plaintiff concedes that those two statutes did not create a new cause of action, but argues that his claims should proceed, as other federal courts in the Commonwealth have allowed those claims to proceed. (Doc. 100, pp. 35-37). I agree with Plaintiff.

The Pennsylvania Wrongful Death and Survival Act "did not create a new theory of liability but merely allow[s] a tort claim of the decedent to be prosecuted." *Ferencz v. Medlock*, 905 F. Supp. 2d 656, 674 n.10 (W.D. Pa. 2012). So, if "no underlying tort has been pled, there can be no wrongful-death or survival action." *McCracken v. Fulton Cnty.*, No. 19-cv-1063, 2020 WL 2767577, at * 27 (M.D. Pa. May 28, 2020). Therefore, if a plaintiff has pled successful Section 1983 claims, then their wrongful death and survival action claims should be allowed to proceed. *See, e.g., Summers v. City of Phila.*, No. 17-191, 2017 WL 2734277, at * 28-29 (E.D. Pa. June 26, 2017); *Beaty v. Delaware Cnty.*, No. 21-cv-1617, 2021 WL 4026373, at * 3 (E.D. Pa. Aug. 5, 2021); *Maldet v. Johnstown Police Dep't*, No. 19-cv-325, 2019 WL 2435869, at *7 n.7 (W.D. Pa. June 11, 2019). And because Plaintiff has successful pled a Section 1983 claim Plaintiff's survival action and wrongful death claims will continue.

V.     CONCLUSION

PrimeCare Defendants' Motion to Dismiss will be denied. An appropriate

Order will issue.


Date: August 31, 2022                          BY THE COURT

                                               *s/William I. Arbuckle*
                                               William I. Arbuckle
                                               U.S. Magistrate Judge